In re BEVERIDGE.

No. 321. April 9, 1940.

Rehearing Denied Oct. 1, 1940.

Application for Leave to File Second Petition for Rehearing Denied Nov. 19, 1940.

*106 P. 2d 1104.*

A. Wood Rigsby, of Tulsa, for respondent.

A. O. Harrison, of Bartlesville, and V. P. Crowe, of Oklahoma City, for the State Bar of Oklahoma.

RILEY, J. The Board of Governors of the State Bar recommend that respondent, John V. Beveridge, be suspended from the practice of law for a period of two years. The original complaint was divided into five counts, of which 1, 3, 4, and 5 have been dismissed. From a finding against him on count No. 2, and the recommendation of suspension, respondent brings this appeal.

In January, 1931, Harry L. S. Halley ascended the district bench in Tulsa county. In March, 1931, he entered into a contract whereby he sold his right, title, and interest to the law business in his files to respondent in consideration of remission to him by the latter of "* * * one-half of the earned fees now in said files as the same are collected, less the usual and ordinary expenses attached thereto," and in consideration of $1,000, to be paid $100 at the execution of the

contract, receipt of which was acknowledged, and the remainder in stated sums at stated intervals during the following 12 months.

Among the cases sold under the above contract was one pending in the district court of Creek county entitled Von Eicks v. Parker. Halley represented the Parkers, and at the time respondent entered the case, it was pending on a motion to quash.

Halley notified the Parkers, who lived in California, that respondent was handling the case. Mrs. Parker returned, and according to her testimony, told Halley respondent was unknown to her and she desired M. A. Breckenridge to handle the case. Halley replied he could not do that, since he had "sold" the case to Beveridge. She then asked if Breckenridge could be consulting attorney, and Halley consented. Thereafter she talked with respondent, and subsequently requested Breckenridge to enter the case. Mrs. Parker then returned to California, where she remained until 1933.

Breckenridge conferred with Halley, who informed respondent Breckenridge was in the case and that subsequent pleadings were to be submitted to him. Beveridge continued in active charge of the case and engaged his younger brother, who was practicing law in Los Angeles, to investigate certain phases of the facts there. On such facts an answer and cross-petition were prepared and filed June 11, 1931, wherein plaintiffs and their counsel were charged with conspiracy. Shortly after receipt of a copy of the cross-petition, the plaintiff, also a resident of California, committed suicide. The case was not properly revived, and on June 3, 1933, the action was dismissed.

On June 15, 1932, respondent and E. G. Wilson entered into a written partnership agreement providing, among other things, that "* * * all pending business of each party hereto shall become the business of the said firm and said firm is entitled to the proceeds of said pending business."

On January 12, 1933, respondent wrote a letter to Mrs. Parker at Hollywood, Cal. Therein he stated a conference had been had with Breckenridge in regard to the dismissal of the case and the fees "we" will charge you. He cited the amount of time and effort "we" spent in successfully terminating the litigation, and stated "we" are of the opinion the fee should be $1,200. It was then suggested they could have some time to pay the fee, but if they desired, "we" could make arrangements to refinance the loan on the property, providing "our" fee is paid.

On the said date respondent enclosed a copy of the Parker letter in a letter to Breckenridge, wherein respondent stated he was satisfied that if Mrs. Parker would pay "us," he could get the mortgage reinstated for enough to pay off the present loan, pay "our" fees and in addition leave her some money. He concluded the letter by stating he would get in touch with Breckenridge as soon as he heard from Mrs. Parker.

A loan was negotiated and respondent was paid $600 in cash during June or July, 1933. Sometime later, Breckenridge, in a conversation with the Parkers, first learned of the payment of the $600. He testified he made repeated efforts to get Beveridge to pay him a portion of the fee, and on October 10th wrote Wilson and Beveridge that he was informed $600 cash had been paid and $600 in notes executed by the Parkers; that he had received no part thereof, and demanded $300 in notes, stating he would hold the partnership liable.

During the latter part of October respondent secured an additional loan for the Parkers and discounted the notes $100, receiving in payment thereof the sum of $500.

On November 6th, Breckenridge wrote respondent that he had learned from the Parkers that a few days previously the notes had also been paid, again demanded his part of the fee and threatened Bar Association proceedings if he was not paid.

From the $1,100 received respondent has paid $253.50 expenses and $100 to Halley. Wilson claims one-half the fee received by Beveridge in accordance with the partnership agreement. Halley states he understood Breckenridge was entitled to one-half of the fee, and that he (Halley) was entitled to one-half of respondent's portion of the fee, or one-fourth of the total. Respondent contends that Breckenridge, Halley, and Wilson each demanded one-half of the fee, that is, $600, and that he asked Breckenridge and Halley to discuss the matter because he did not know where he stood with all of them. Respondent contends he owes Breckenridge nothing, that the latter's employment was through the Parkers or Halley, and that he should look to one or the other for his fee.

As to Wilson, respondent contends he owes him nothing for the reason the Halley cases were orally reserved from the partnership business, and offered to show that Wilson actually owed him money under the partnership agreement. Respondent alleges ability and willingness to pay Halley any sum that a committee of lawyers determines is due.

The testimony is sharply conflicting and a lengthy summation would serve only to confuse.

In his brief respondent contends "* * * the whole controversy is over division of fees and the parties do not agree on the facts." After considering the entire record, we conclude a more important question than a mere dispute over a division of fees is involved. If it were the latter, we would not hesitate in dismissing the proceedings. The question of most serious import in this record is the good faith, or rather, the lack of good faith, upon the part of respondent in the division of fees with associate attorneys and with a partner. We are convinced the record pertaining to count No. 2, as a whole, sustains the finding of the disciplinary agency relating to an inconsistent, shifting, evasive, and dilatory attitude on behalf of respondent whereby, contrary to explicit, voluntary obligations to associate attorneys, he, without good faith, neglected and refused to account for moneys earned through joint endeavor.

We view respondent's conduct with his partner, Wilson, of the gravest import. The partnership contract is plain and unambiguous in its provision that all pending business of both parties would become partnership assets, the proceeds of which would be shared equally. If the Halley cases were to be reserved, surely respondent, an able attorney with several years' practice, would have inserted an express reservation. The sincerity of respondent's attempted injection of a partnership accounting into the administrative committee proceeding may be well doubted. It may be there are differences between these former partners properly subject to an accounting, but the issue here defined by respondent's pleading and testimony is one of liability under the partnership agreement. Respondent contends Mr. Wilson has no interest in the Parker fee because the case was orally reserved. The contract is unambiguous and the oral testimony of respondent and witness Ward is inadmissible to explain or vary its terms. Respondent's denial of his liability is not satisfactory.

Insofar as the claim of Breckenridge is concerned, respondent's liability is not so plain as in the partnership transaction. Yet, if we accept respondent's explanation of this phase of the proceedings, we must disregard the testimony of Mr. Parker, Mrs. Parker, Breckenridge, and Halley, wherein it conflicts on material questions with that of respondent. Furthermore, respondent's testimony concerning his relationship with Breckenridge is inconsistent with the letters he wrote Breckenridge and Mrs. Parker under date of January 12, 1933. His reference therein to "our fee" and "we are of the opinion that we should be paid $1,200" absolutely refutes the summation of his own testimony in his brief wherein it is stated that "* * * in submitting a fee he considered and submitted a statement covering only the service he (Beveridge) had rendered."

There might be some ground for an honest dispute over a division of the fee between Breckenridge and Beveridge, but again, as in the case with Mr. Wilson, respondent narrows the issue and eliminates the question of an accounting when he says, "I deny owing Breckenridge anything." His written word, as in the case with Mr. Wilson, shows the contrary. Furthermore, respondent failed to get in touch with Breckenridge when he heard from Mrs. Parker as was promised in his letter to Breckenridge January 8, 1933. Breckenridge's information came from the Parkers.

Our holding herein is not to be construed that honest disputes involving division of fees between associated attorneys or partners are subject to disciplinary proceedings before the State Bar Association. Such organization is not to be used for avenging a private grudge or as a collection agency. But where it is shown that an attorney, with dishonest motives, has denied his obligations to his partner and to an associated attorney, he is subject to disciplinary action. In re Youngentob, 168 N.Y.S. 961.

The administrative committee recommended disbarment. The Board of Governors have recommended suspension for two years. We are of the opinion respondent should be suspended from the practice of law for a period of three months under our view that finding No. 2 of the Board of Governors is not against the clear weight of the evidence. It is so ordered.

BAYLESS, C. J., and OSBORN, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN and GIBSON, JJ., absent.